### McGHEE v. SWIFT & CO.

(Circuit Court of Appeals, Fourth Circuit. July 2, 1918.)

#### No. 1613.

1. LIBEL AND SLANDER &54—DEFENSES—TRUTH.

Where defendant arranged with plaintiff to advertise its products in newspapers, and, discovering that the account had been assigned, refused to honor a check given plaintiff in payment, *held*, that a communication to a newspaper which had carried the advertisement, detailing the circumstances, furnished no basis for recovery; the statements reflecting on plaintiff's business integrity being true.

2. LIBEL AND SLANDER &45(2)—PRIVILEGED COMMUNICATIONS.

Where defendant arranged with plaintiff to advertise its products in newspapers, and, discovering that the account had been assigned, refused to honor a check given plaintiff in payment, *held*, that a communication to a newspaper which carried the advertisement relating the circumstances, was privileged.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Action by J. Rutledge McGhee against Swift & Co. Judgment for defendant, and plaintiff brings error. Affirmed.

E. J. Best, of Columbia, S. C., for plaintiff in error.

D. W. Robinson, of Columbia, S. C., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge.   In the court below the defendant corpora-
tion, Swift & Co., had judgment on a directed verdict, and plaintiff
comes here on assignments of error.   The action is for libel, and the
material facts, practically undisputed, appear to be these:

On December 19, 1916, the plaintiff, under the name of Western
Carolina Publishing Company, J. Rutledge McGhee, president, con-
tracted with defendant to place "$750 or more" of advertising matter
in various newspapers of North Carolina and South Carolina.   On or
about February 10, 1917, defendant received notice from the People's
National Bank of Rock Hill, S. C., that this contract had been assigned
to it as collateral security for certain indebtedness of McGhee.   Under
date of March 20th, McGhee wrote a letter to defendant, in which he
states, among other things:

"In regard to the bank at Rock Hill, I beg to say that I have adjusted this
matter, and there will be no necessity for you figuring in our transaction in
any way whatever."

On the 11th of April he presented and requested payment of a bill
for $872.64, for advertising in some 42 newspapers, a list of which he
furnished, stating that he desired to settle with the papers, that he had
drawn a great many of his own checks and already mailed some of
them, and exhibiting a bundle of checks and addressed envelopes.
Three days later, a check for the amount was sent him from defend-
ant's Atlanta office.   On the 17th of April this check was deposited by
him in the Bank of Johnston, S. C., to the credit of J. Rutledge Mc-
Ghee Advertising Agency, and in that name he checked out $708.70
the same day, $57 on the 19th, and $100 on the 23d, or a total of
$865.70.   None of these checks was drawn in favor of or paid to any
of the newspapers in question; and plaintiff admits, as may here be
stated, that up to some two months after defendant wrote the letter
on which the suit is brought he had not paid a single newspaper or
reduced his debt to the Rock Hill Bank.   On April 18th defendant
was advised by this bank that McGhee's indebtedness to it, secured by
assignment of the advertising contract, remained unpaid.   Thereupon
defendant at once took steps to stop payment of the check it had mailed
him on the 14th, and wired him to return the same.   He replied next
day:

"Check cashed and money disbursed, therefore cannot return; will expect
it to be paid."

Shortly afterwards the Bank of Johnston notified defendant that
it had accepted the check in good faith and allowed the proceeds to be
drawn out without notice that payment had been stopped.   Later it
brought suit, and defendant then paid the check on advice of counsel.
Under date of May 3d, McGhee sent the following circular letter to
all the newspapers with which he had placed advertisements under his
contract with defendant:

"Check for the account of Swift advertising, which was carried by you and
for which you rendered bill, has been held up.   The account was passed for
payment and check was duly made out to you by us, when in the meantime
Swift & Co. stopped payment on the check then issued to us.   We are writ-

ing to ask you to bear with us a little longer until we can get the matter straightened out with Swift & Co."

A few days afterwards, May 15th, he gave the Rock Hill Bank a sight draft on defendant for the $872.64, payment of which was refused.

[1, 2] In the meantime and at subsequent dates the defendant received letters inclosing bills from most of the newspapers which had carried the advertisements, including three published by McGhee himself. Amongst others, the Pee Dee Advocate, of Bennettsville, S. C., wrote to defendant and sent its bill, first on the 13th of April, again on the 28th of that month, and the third time about the 1st of June. In reply to that paper the defendant on June 5th wrote the letter in suit, which reads as follows:

"We have to acknowledge receipt of yours of the 28th inst., concerning your claim against J. Rutledge McGhee's Advertising Agency for $9.60, for advertising our fertilizers placed in your paper by Mr. McGhee's Agency. In reply thereto we beg to say that we entered into a contract with Mr. McGhee by which we agreed to pay him $872.64, for carrying certain advertisements for us in certain papers in North and South Carolina. In compliance with our agreement, we mailed Mr. McGhee a check for this amount on the 14th day of April, 1917, with the expectation that he would apply the same to the payment of various bills, to various newspapers, for this advertising. Prior to issuing this check we received notice from a Rock Hill Bank that Mr. McGhee has assigned his advertising contract with us to that bank, to secure a loan; when our check was issued to Mr. McGhee, we had temporarily overlooked this fact, but, having it called to our attention, we promptly stopped payment of check, under threat from the Rock Hill Bank that it would hold us responsible for amount thereof. Since we stopped payment of check we have received information from the Bank of Johnston, Johnston, S. C., that they received this check from McGhee as a cash deposit, and that he has already checked out, apparently on his own private account, the full amount thereof. Having refused to pay the check, we are now being threatened by suit at the hands of the Johnston Bank, as well as the Rock Hill Bank, and we have been advised by our counsel not to pay either of these banks until required to do so by law. From the foregoing you can readily see that Mr. McGhee's conduct in using the proceeds of this check for his own private ends, rather than in payment for advertising, as he should have done, has complicated the situation very much, and has made it impossible for us to do anything in the premises until our legal rights and liabilities shall have been settled. If you have any leverage by which you can put pressure on Mr. McGhee to pay the amount due you, we trust you will proceed to do so, as you do not know us, and we do not know you, in this transaction. We believe that, if you will get sharply after McGhee, he will make arrangements to pay you, and other newspapers similarly situated, the amount he justly owes you for this advertising. Kindly let us hear from you with reference to this matter at your convenience, and oblige."

At the trial, in November, 1917, no attempt was made by testimony or otherwise to show that the letter sued on was written with any malicious intent or purpose, and plaintiff admitted on the witness stand all the facts above recited. The mere statement of these facts seems sufficient, under familiar principles of law, to answer the plaintiff's contentions. Even if it be conceded that the letter, or any part of it, was libelous per se, because of reflections upon the business integrity of McGhee, we are nevertheless of opinion that a verdict for defendant was properly directed on the ground, which the evidence puts beyond

252 F.—51

serious doubt, that the communication was both privileged and truthful. Indeed, the case is so clearly within the accepted definition of qualified privilege that we deem it quite unnecessary to argue the proposition or to cite authorities. It is enough to say that the circumstances fully justified defendant in writing the letter, and that it contains no statement or imputation to plaintiff's discredit which is not confirmed by his own confession.

Affirmed.